## ACME SEMI-ANTHRACITE COAL CO. v. MANNING et al.

No. 27007. Dec. 15, 1936.

Varner & Varner, for petitioner.

L. B. Norton and Mac Q. Williamson, Atty. Gen., for respondents.

PER CURIAM. This is an original proceeding to vacate an award made to Richard Manning, claimant, by the State Industrial Commission for a disability arising under the Workmen's Compensation Law due to an injury sustained on November 16, 1934, at which time claimant suffered a foot injury.

At the hearing before the commission on the 10th day of January, 1936, the following stipulation and agreement was made:

"It is hereby agreed by and between the respondent, Acme Anthracite Coal Company, and Richard Manning the claimant, that Richard Manning was injured on the 16th day of November, 1934, while in the course of his employment with said coal company, and at the time of his injury he was drawing the sum of $4 per day as wages, and that he was totally disabled from the 16th day of November, 1934, until the 20th day of November, 1935, and that he has been paid compensation at the rate of $10 per week for the time lost.

"It is further stipulated and agreed by and between the parties that the claimant now has a permanent partial disability of 75 per cent. loss to his right foot as a result of the said injury.

"It is further stipulated and agreed that the claimant had worked for said respondent for a period of more than twelve months in the year immediately preceding the date of the injury, and that during said twelve months claimant had earned as wages the sum of $260.21; that claimant had not worked for any other company or firm during said period of time, and that the respondent company had operated its mine during the said twelve months immediately preceding the injury for a term or period of 58 days, and that during the twelve months immediately preceding the injury by claimant he had worked for said respondent for 62 days. That at the time of the injury claimant was doing day work as a rope rider at $4 per day, and that he had worked as a rope rider for a period of 32 days during

said twelve months, and that he had worked as a miner for a period of 30 days during said twelve months on tonnage basis and had earned as a miner on tonnage basis the sum of $107.11 during said year and had earned as a rope rider the sum of $123.69 during said year.

"It is further stipulated and agreed that the report of Dr. H. M. Kech, dated December 26, 1935, may be accepted and considered by the commission as medical testimony in this case.

"It is further stipulated and agreed that the agreement of the parties evidenced by this stipulation shall not preclude them from offering further proof when this agreement is submitted to the commission for hearing on other points not covered by this stipulation.

"It is further stipulated and agreed that the mines of the respondent did not operate throughout the entire year and did not operate regularly during the number of days that it did operate, but did operate intermittently throughout the year because of economic conditions."

In addition to this stipulation it was further agreed that there might be introduced in evidence a certain purported certificate of the days the mine of petitioner operated and the total number of days worked by the respondent; together with the gross earnings of claimant during the period in the sum of $260.21.

Except these stipulations no evidence was introduced before the State Industrial Commission, and on the 14th day of February, 1936, the commission entered its order, which, omitting the formal parts, is as follows:

"That on November 16, 1934, the claimant was in the employment of said respondent and engaged in a hazardous occupation subject to and covered by the provisions of the Workmen's Compensation Law, and that on said date sustained an accidental injury arising out of and in the course of his employment, consisting of an injury to the right foot.

"That the average weekly wage of the claimant at the time of said accidental injury was $24.17 per week.

"That claimant sustained a temporary total disability by reason of said accident from November 16, 1934, less the five-day waiting period to November 20, 1935. That as a result of aforementioned accidental injury claimant suffered a partial permanent disability to the right foot resulting in 75 per cent. loss of use of the right foot.

"The commission is of the opinion, upon consideration of the foregoing facts, that claimant is entitled to temporary total compensation at the rate of $16 per week, from November 16, 1934, less the five days to November 20, 1935, being a period of 52 weeks and a total sum of $832, less any amount heretofore paid.

"The commission is of the further opinion, that claimant is entitled to permanent partial compensation for the 75% loss of use of the right foot in the amount of $1,800."

The petitioner raises but one question, and that is the sufficiency of the evidence to support the amount of the award made by the commission.

It does not appear from the record that there is any competent evidence to sustain the award entered either under subdivisions 1, 2, or 3 of section 13355, O. S. 1931.

Under the stipulation in this case claimant is removed from subdivision 1, since he did not work substantially the whole of the year for the same employer or for any other employer. Petitioner states that subdivision 2 cannot be used in this case until there is some evidence introduced to show the average daily wage or salary which an employee of the same class, working substantially the whole of such immediately preceding year in the same or a similar employment, in the same or in a neighboring place, shall have earned in such employment during the days when so employed. With this we agree. Petitioner then urges that claimant made only $260; this amount must be presumed fairly to indicate his earning capacity, and that compensation should be computed by dividing this sum by 52 under the provisions of subdivision 4 as a basis of the award. We have held that should not be done. In Skelly Oil Co. v. Ellis, 176 Okla. 569, 56 P. (2d) 891, in the third paragraph of the syllabus we said:

"Where compensation is sought under the Workmen's Compensation Law of this state, subdivisions 1, 2, and 3 of section 13355, O. S. 1931, provide exclusive methods for determination of the annual earnings of the employee; when the annual earnings of such employee have been ascertained by one of the three methods provided, then the weekly wage is to be ascertained in the manner as set forth in subdivision 4 of said section 13355, O. S. 1931."

Since subdivision 1 cannot apply, it is the duty of the commission to direct its attention to subdivision 2 to see if the terms thereof can be fairly and reasonably applied. Its application of subdivision 2 is limited by the terms thereof, and the discretion of the commission will not be disturbed as long as its finding of fact based upon competent evidence is within the terms of that sub-

division. If subdivision 2 cannot be applied, then the commission should address itself to the provisions of subdivision 3. The provisions of subdivision 3 of section 13355, O. S. 1931, are:

"If either of the foregoing methods of arriving at the annual average earnings of the injured employee cannot reasonably and fairly be applied, such annual earnings shall be such sum as, having regard to the previous earnings of the injured employee and of other employees of the same or most similar class, working in the same or most similar employment in the same or neighboring locality, shall reasonably represent the annual earning capacity of the injured employee in the employment in which he was working at the time of the accident."

It will be readily seen that there is nothing therein which directs or permits the commission to use as a criterion the actual amount paid to the claimant in the year immediately prior to the injury. Neither does it direct or permit the exclusive use of the amount a like employee earned in a year immediately previous to the injury. The language is that it shall be such sums as, having regard to the previous earnings of the injured employee and of other employees of the same or most similar class working in the same or most similar employment in the same or neighboring locality, **reasonably represent the annual earning capacity of the injured employee in the employment in which he was working at the time of the accident.** We discuss this in Skelly Oil Co. v. Ellis, supra, and we said in quoting from Frick-Reid Supply Co. v. Hunter, 171 Okla. 348, 43 P. (2d) 145:

" 'Where the State Industrial Commission upon the evidence before it erroneously orders an award of compensation computed as provided by subdivisions 1 and 2, section 13355, O. S. 1931, and other evidence in the record would support an award computed upon the basis provided in subdivision 4 of said section 13355, supra, this court, in vacating the award and remanding the matter to the commission, will not order an award upon the record made at previous hearing without affording the claimant an opportunity to make a showing under subdivision 3 of section 13355, supra.' In that case we definitely repudiated petitioner's contention that the actual aggregate annual earnings of an injured employee who worked at irregular intervals when divided by 52 constitutes a maximum limitation on the weekly rate of compensation, and held that the controlling statutory provision in determining the base rate of compensation in this character of case is subsection 3, section 13355. The case constitutes a modification

by inference of some of the language used in the previous case of American Tank & Equipment Co. v. Gray et al., 167 Okla. 494, 30 P. (2d) 901, wherein we applied to a case involving an irregular employee the rule previously announced in connection with an employee working a part of each month under a general and agreed plan of part-time employment. See Producers' & Refiners' Corp. v. McDougal, 166 Okla. 60, 26 P. (2d) 210."

We declined to use the process of division suggested by petitioner in Nichols Transfer & Storage Co. v. Pate, 173 Okla. 582, 49 P. (2d) 225, an opinion prepared by Mr. Justice Busby and cited in Skelly v. Ellis, supra, and said therein, referring to Frick-Reid Supply Co. v. Hunter:

"In that case we definitely repudiated petitioner's contention that the actual aggregate annual earnings of an injured employee who worked at irregular intervals when divided by 52 constitutes a maximum limitation on the weekly rate of compensation, and held that the controlling statutory provision in determining the base rate of compensation in this character of case is subdivision 3, section 13355."

Skelly Oil Co. v. Ellis, supra, also distinguishes the doctrine announced in Oklahoma City v. Arnold, 165 Okla. 294, 25 P. (2d) 651, and the case following it.

It is to be noted that subdivision 1 and subdivision 2 deal with a method of computation by the average daily wage. That phrase was dropped in subdivision 3, and we think for a definite reason. Subdivision 3 is seeking to develop a broad and liberal method of determining, not the average daily wage, but the **annual earning capacity** of the injured employee in a field denominated by that subdivision, and as long as there is competent evidence introduced to support the finding of the commission on what that annual earning capacity is, this court will not disturb it. And until there is competent evidence introduced to support such finding, this court cannot tell what it is. We said in Skelly Oil Co. v. Ellis, supra, that claimant must be given an opportunity to establish by competent evidence under which provision he comes and to offer evidence competent to support an award based thereon. This was not done in this case.

The award is vacated, with directions to the State Industrial Commission to take testimony in accordance with the views herein expressed.

OSBORN, V. C. J., and BAYLESS, WELCH, CORN, and GIBSON, JJ., concur.