## CHICKASHA COTTON OIL CO. et al. v. MARCUM et al.

No. 27188.    Oct. 12, 1937.

Rehearing Denied Feb. 8, 1938.

Butler, Brown & Rinehart, for petitioners.

Mac Q. Williamson, Atty. Gen., for respondents.

PER CURIAM. This is an original proceeding by the petitioner to vacate an award of the State Industrial Commission entered on behalf of Earnest Marcum, an employee of a gin company.

The parties will be referred to as petitioner and respondent. Respondent filed a claim with the State Industrial Commission for an injury resulting in the loss of his hand while operating a gin for the petitioner. The commission entered its order under date of April 22, 1936, based upon a salary of $100 per month, computing the rate of compensation weekly at $15.39 for 200 weeks.

The sole question presented is the rate of compensation. The employee's first notice of injury shows that the accident happened October 3, 1935, and gave the occupation of respondent as gin manager, and states that he was paid $100 per month, and that while engaged in removing motes and seeds from the saw and ribs of the gin his right hand was caught in the saw and mangled in such manner that amputation was necessary. This report was filed October 8, 1935. On February 26, 1936, the petitioner filed a motion which states in part as follows:

"Comes now the respondent, Chickasha Cotton Oil Company, and the Casualty Reciprocal Exchange, its insurance carrier, and represent that heretofore and on the 3rd day of October, 1935, the claimant sustained an accidental personal injury which caused him to lose his right hand; that at the time he was engaged in a hazardous employment, to wit, operating gin saws; that it has been determined that the man's general duties consisted of managing a gin, for which he was paid $100 a month, but that on the particular day in question he was running a gin, which work was ordinarily done by the ginner at a wage of $3 per day. Your applicants would show to this court that the compensation rate in this case should be based on $11.54 a week instead of $15.39 a week."

The first proposition of petitioner is that the State Industrial Commission erred in awarding the claimant compensation upon a salary of $100 per month and a compensation rate of $15.39 a week for the reason that at the time of the accidental injury the claimant was engaged in the employment of ginner, which paid not to exceed $3 per day or $18 per week. Both witnesses of petitioner and respondent testified that respondent was paid $100 per month for his work, which included acting as ginner when the occasion required; that other gin managers in the community were likewise paid from $100 a month to $125 per month; that the $100 included both payment for managing the gin and such manual and mechanical labor as he did. Petitioner admits that the employment is compensable and the position is urged solely on the theory that as he was working as a ginner at the time he was injured, ginner's wages should apply. Witness Tyrrell for the petitioner was asked if he was paid separate wages for his work as ginner at any time, and the reply was no. We cannot agree with this contention. Petitioner cites in support of the theory, R. S. James Construction Co. v. Aylor, 171 Okla. 173, 42 P. (2d) 528, in which Aylor was paid on the basis of the amount he drew as school teacher and citrus worker, whereas he was injured while working as construction hand, and this court reversed the case, with directions to proceed to determine what a like employee, working for substantially the whole of a year, made. Petitioner also relies upon Harris Meat & Produce Co. v. Brown, 177 Okla. 317, 59 P. (2d) 280. The claimant therein was limited to what he made as engineer and was not permitted to take into consideration what he was paid as bookkeeper, which latter sum was in the amount of $125. These cases are not in point. There is competent evidence in the record that respondent worked for six or seven months in the year immediately prior to the accident, and there was competent evidence that a like employee, to wit, gin manager, who had been employed for the last seven months in the year immediately prior to the accident, drew from $100 a month to $125 per month.

Proposition 2 is that the State Industrial Commission erred in awarding respondent compensation based upon a salary of $100 per month and a compensation rate of $15.39 per week, for the reason that the evidence shows that the employment in which the claimant was engaged at the time of the accident was seasonal employment and extended over a period of 85 or 90 days during the season. What we have said above largely disposes of this proposition. The argument is based purely upon the assumption that respondent is a ginner and not a gin manager and that a ginner works only for 85

to 90 days during the season, and is therefore a casual worker.

In Home Indemnity Co. v. Dollar, 166 Okla. 145, 25 P. (2d) 337, we said:

"A party to an action, having presented his case or defense to the Industrial Commission upon a certain and definite theory will not be permitted to change in this court, and prevail upon another theory and issue not presented to the commission. Western Indemnity Co. v. State Industrial Commission, 96 Okla. 100, 219 P. 147, 29 A. L. R. 1419."

By reference to the motion filed above, it will be seen that petitioner stood simply upon the proposition that respondent was entitled to his wages as a ginner at $3 per day and not to his $100 per month salary as gin manager. Respondent proceeded to produce testimony both as to his salary and his duties thereunder to disclose that part of his duties under his $100 salary was to work as a ginner, and claimant proceeded to show that other gin managers in the same community did and performed like services for similar salaries and that at least two such employees drew the sum of $125 and $150 for such services. We have said that the average annual earnings of an employee under subdivision 1 is 300 times the average daily wage; and that if he has not been employed for substantially the whole of the year, the commission should proceed to determine his annual earnings by multiplying the average daily wage of a like employee employed substantially for the whole of a year by 300. If neither of these methods of arriving at the annual earnings of an employee can be used, the commission should proceed to determine the annual earning capacity of the injured employee. If the petitioner was of the opinion that such evidence as recited above was not competent to establish the average daily wage of the respondent, or a like employee, it should have relied upon that objection at the time. Westgate Oil Co. v. Matthews, 176 Okla. 346, 55 P. (2d) 1043; Superior Smokeless Coal Co. v. Cattaneo, 180 Okla. 135, 68 P. (2d) 497.

Taking into consideration the motion filed before the commission in which the petitioner maintained that respondent should draw only $3 per day as ginner and not his $100 per month as gin manager, and the additional fact that the employer filed the first notice referred to above stating the salary of petitioner to be $100 per month, we conclude that at this time the petitioner should not be allowed to change its position and urge that the employment of the respondent was seasonal or casual.

One other argument is made in this connection, that is, that since the respondent was paid a total of $600 for six months work, his weekly wages could only be $11.50, which is arrived at by dividing 52 into $600. We discuss the error of this theory in Skelly Oil Co. v. Ellis, 176 Okla. 569, 56 P. (2d) 891, and Acme Coal Co. v. Manning, 178 Okla. 420, 63 P. (2d) 76. The average daily wage either of one employed for substantially the whole of a year or a like employee employed for substantially the whole of a year is first ascertained by the commission as a multiplier. Three hundred is then set by statute as a multiplicand, and the product is the annual earnings. The process is one of multiplication and not division. Skelly Oil Co. v. Ellis, supra; Harris Meat & Produce Co. v. Brown, supra. As to whether or not subdivision 1 or 2 can be fairly and reasonably applied is largely within the discretion of the State Industrial Commission, and where there is competent evidence to establish the average daily wage of the respondent, either under subdivision 1 or 2 of section 13355, O. S. 1931, the findings of the State Industrial Commission will not be disturbed. Acme Coal Co. v. Manning, supra.

We are of the opinion, and hold, that there was competent evidence in the record to support the findings of the State Industrial Commission that at the time of the accidental injury the respondent was drawing the sum of $100 per month, upon which basis they found that his weekly wage was $15.39. The basis of this weekly wage is not contested if it be admitted that the commission was authorized to find that the salary of the respondent was that of a gin manager at $100 per month.

The award is affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and RILEY, CORN, GIBSON, HURST, and DAVISON, JJ., concur. WELCH and PHELPS, JJ., absent.