FRIENDSHIP FARMER'S CO-OPERATIVE GIN et al. v. ALLRED et al.

No. 31951. Dec. 18, 1945.

Rehearing Denied Feb. 12, 1946.

*165 P. 2d 838.*

Kerr, Lambert & Conn, of Ada, for petitioners.

L. B. Yates, of Altus, and Randell S. Cobb, Atty. Gen., for respondents.

ARNOLD, J. The accident giving rise to this proceeding occurred November 26, 1942. At that time respondent was working for the petitioner in the cotton storage house feeding seed cotton into the suction to be conveyed thereby to the ginning stands. A defective door in the cotton house caused respondent to fall upon a concrete slab fracturing his skull, right shoulder, and causing internal injuries. The award was for 500 weeks' compensation.

No question is raised here as to the compensable nature of respondent's injuries. The only objection urged to the order of the State Industrial Commission is that the weekly rate of compensation was determined under the wrong subdivision of section 21 of the Workmen's Compensation Law. It is insisted that the rate of compensation should have been calculated under subdivisions 3 and 4 of said section, and that there is no competent evidence in the record to sustain the rate of compensation fixed by the commission under subdivision 2 of that section.

It is disclosed by the record in this case that the respondent, Harlin Allred, was an unskilled day laborer and that he engaged his services as such unskilled day laborer to any person in his community needing his services; that his principal employment during the year preceding his injury was that of a farm laborer but occasionally he worked at petitioner's gin in the same capacity during the ginning season and especially when the weather was such that he could not engage in field work. It is disclosed by the record that his daily wage as a farm laborer was from $1.50 to $3 per day; that during the cotton harvesting season he earned from $8 to $10 a day picking cotton and pulling boles; that when he worked in the cotton house at the gin he received 50c an hour, or $4 a day, which was the regular rate paid by the gin company to unskilled labor in its employ; that by his labor on farms and at the gin he earned annually approximately $1,200; that other laborers in the Friendship community doing farm work and unskilled labor at the gin earned approximately the same annually as did the respondent; that he worked for petitioner 17 or 18 days during the year preceding his injury; that an employee of another gin company in the neighborhood or community worked as a common laborer 251 days during the year preceding the injury complained of.

From all of the evidence adduced on the various hearings the commission made the following order:

"That at the time of said injury claimant was being paid wages at the rate of fifty cents per hour or $4.00 per day; that the claimant had not worked in said employment for substantially the whole of year next preceding the date of said injury, but the Commissioner finds from all the evidence introduced herein that fifty cents per hour or $4.00 per day was the average

464

wage scale being paid for the same or most similar work in the community where claimant was injured, at the time of said injury, and that said sum of $4.00 per day fairly represents claimant's average daily earnings for the year next preceding the date of said injury, and, therefore, claimant's compensation rate should be fixed at $15.39 per week."

It is the contention of petitioners that the respondent was employed and injured in an intermittent and noncontinuous employment and that his rate of compensation should have been computed under subdivisions 3 and 4 instead of under subdivision 2 of section 21, 85 O. S. 1941. In support of the theory thus advanced petitioners rely upon and cite numerous authorities from other jurisdictions, including Michigan, New York, and Federal Circuit Courts. In those cases cited and quoted from by petitioners, wherein statutes substantially like our own were construed and applied, the employees were skilled mechanics engaged in occupations which were seasonal in their nature but in which unskilled labor was not the class of labor involved. Other cases cited involved statutes differing so substantially from ours as to make the interpretation placed thereon of little value in determining the question here involved.

Wages received by employees for labor performed in a different class of employment or industry than that in which the accident occurred may not be used as a basis for calculation of the rate of compensation. Briscoe Construction Co. v. Miller, 184 Okla. 136, 85 P. 2d 420. A common laborer on a farm is not engaged in the "same" or a "similar" employment as that of cotton ginning and testimony as to wages paid such laborer is not competent to establish the average daily, weekly, or annual wage or earning capacity of a cotton ginning industry. If, however, a cotton ginner, though his business generally is seasonal or intermittent, employs and engages common laborers throughout the substantial whole of the year in further-

ance of his business, the compensation rate of a common laborer injured while working in such an industry may be fixed under certain circumstances on the basis of the average annual earning of such an employee in the manner prescribed by 85 O. S. 1941 § 21. The methods of computation of the rate provided thereby are exclusive. The method followed must be supported by competent evidence and in effect exclude the application of the various other methods prescribed.

It must be conceded that actual ginning in this state is seasonal. According to the evidence and common knowledge an employee could not actually gin cotton more than five or six months during the year. Compensation rates must be based upon earning capacity in the industry by the class of labor injured. If the industry or one similar does not furnish employment to the class of laborers to which the injured employee belongs for the substantial whole of the year, then neither subdivision 1 nor 2 can apply, but it does not necessarily follow that because the principal business of an employer is intermittent the earning capacity of a certain class of laborers who worked or could work in such an industry for the substantial whole of the year must be limited to their earning capacity during the season. It was the intention of the Legislature that the industries classified under the Workmen's Compensation Law should bear the burden of decreased earning capacity resulting from accidents within the industries classified. For this reason the Legislature made the amount of compensation dependent upon the class of labor and the class of employment. Obviously the intention of the Legislature would be thwarted if common laborers who work or could work in a so-called seasonal industry for the substantial whole of the year were limited for compensation purposes to their earning capacity during the seasonal operation of the principal intermittent business of the employer.

The determination of the Industrial

Commission that common laborers are employed for substantially the whole of the preceding year by the employer or others engaged in the same employment in the neighborhood and compensation based on the average daily wages of such workmen will not be disturbed by us if there is any competent evidence reasonably tending to support such determination. E. I. Du Pont De Nemours & Co., Inc., et al. v. Spencer et al., 195 Okla. 300, 157 P. 2d 186; Chickasha Cotton Oil Co. et al. v. Marcum et al., 182 Okla. 55, 75 P. 2d 1129. Was there such evidence introduced in this case? There is evidence that the Atlas gin employed one Hooper as a common laborer for 251 days the preceding year (November 26, 1941, to November 26, 1942) and that he received an average daily wage of $4.01. There is no other evidence of wages paid common laborers of sufficiently similar employment to be competent though there is evidence of the wage-earning capacity of common laborers in other and dissimilar employment such as flour mills and cotton oil compressing. In determining this question the exact language of subdivision 2 should be noted. Average annual earnings under this subdivision "shall consist of three hundred times the average daily wage or salary which an employee of the same class working substantially the whole of such immediately preceding year in the same or in a similar employment . . . shall have earned in such employment during the days when so employed". It will be noted that the average daily wage of one employee of the same class engaged in the same or a similar employment in the same or neighboring place is sufficient. We have heretofore held that such an employee so engaged for 252½ days worked the substantial whole of a year. Eagle Picher Mining & Smelting Co. v. Lamkin, 189 Okla. 463, 117 P. 2d 519. The injured employee and the one whose average daily wage was used as the basis of the calculation made were common laborers or worked as such and were paid on the basis of this character of labor and were therefore in the same class. The compensation rate fixed was calculated by multiplying the average daily wage of the employee of another engaged in the same business in the neighborhood by 300 as the statute directs under the facts here disclosed. The number of days worked by the other employee constituted the substantial whole of the immediately preceding year, and the commission correctly based the compensation rate of the respondent thereon.

Award sustained.

GIBSON, C.J., HURST, V.C.J., and WELCH, CORN, and DAVISON, JJ., concur.